**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shana Robertson, | No. CV-21-01711-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Argent Trust Company, et al., | |
| Defendants. | |

In this putative class action, Shana Robertson ("Plaintiff") alleges that Argent Trust Company ("Argent") breached fiduciary duties when administering an employee stock ownership plan ("ESOP" or "the Plan"), in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). In response, Argent has moved to compel arbitration based on an arbitration clause in the Plan and to require Plaintiff to arbitrate her claims on an individual basis. For the following reasons, the motion is granted.

I.  <u>Factual Background</u>

Although Plaintiff alleges a significant number of facts in her complaint, only a few are relevant to the motion to compel arbitration. The Court accordingly limits its recitation to uncontested facts that bear on arbitrability.

Plaintiff is a former employee of Isagenix Worldwide, Inc. (Doc. 1 ¶ 1-2.) She is a participant in that company's ESOP,[1] which held "shares of Isagenix allocated to her

---

[1]    Plaintiff's plan is a defined contribution plan, which is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such

account in the Plan." (*Id.* ¶ 2.)  Argent serves as the Plan's Trustee.  (*Id.* ¶ 3.)

On June 14, 2018, Argent purchased 30,000 shares of Isagenix preferred stock from Defendants Jim and Kathy Coover and Jim and Tammy Pierce.  (*Id.* ¶ 4.)  Plaintiff alleges "the ESOP transaction allowed [the Coovers and Pierces] to cash out a portion of their Isagenix stock at a high price at a time when Isagenix's business was deteriorating, and it placed excessive debt on the Company.  Argent failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff."  (*Id.* ¶ 5.)

In this action, Plaintiff sues to "enforce her rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants resulting from their breaches of fiduciary duty and prohibited transactions, and equitable relief, including rescission of the ESOP Transaction and removal of fiduciaries who have failed to protect the Plan.  Plaintiff requests that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from its ERISA violations, Defendants be ordered to disgorge any profits and any monies recovered for the Plan be allocated to the accounts of the Class members.  As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA."  (*Id.* ¶ 7.)

In response, Argent argues that "pursuant to a valid agreement to arbitrate and to waive proceeding on a representative, class, collective, or group basis, Plaintiff's claims must be addressed on an individual basis in arbitration." (Doc. 25 at 1.)  In support of this request, Argent cites § 17.9(a)(ii) of the Plan, which provides in relevant part:

> Any claim by a Claimant that arises out of this Plan or the Trust Agreement, including, without limitation, any claim for benefits under this Plan or the Trust Agreement; [and] any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation, a breach of fiduciary duty . . . shall be settled by binding arbitration . . . .

participant's account." 29 U.S.C. §1002(34).  *See also Hirt v. Equitable Ret. Plan for Emps., Managers, & Agents*, 533 F.3d 102, 104 (2d Cir. 2008) (identifying a 401K plan as a common example).  By contrast, a defined benefit plan, which was the "dominant paradigm for the provision of retirement income" when ERISA was enacted but is now on the wane, pays "a fixed benefit based on a percentage of the employee's salary." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008) (citation omitted).

(Doc. 26 at 49.)  Argent also cites § 17.9(a)(iii) of the Plan, entitled "No Group, Class or Representative Arbitrations," which provides that all covered claims "must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant." (*Id.* at 50.)

On October 14, 2021—that is, about a week after Plaintiff initiated this action—Argent amended the Plan's arbitration provision. (*Id.* at 59-60, 62-63.)  The amendment states in relevant part:

> [N]othing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on other Employees, Participants, or Beneficiaries.

(*Id.* at 59-60.)

II.     Procedural Background

On October 7, 2021, Plaintiff filed the complaint. (Doc. 1.)

On October 13, 2021, Defendants Argent, Jim and Kathy Cooper, and Jim and Tammy Pierce filed answers to the complaint. (Docs. 22, 23.)

On December 13, 2021, Argent filed a motion to compel arbitration. (Doc. 25.)

On January 28, 2022, Plaintiff filed a response in opposition. (Doc. 30.)

On February 18, 2022, Argent filed a reply. (Doc. 31.)  Neither side requested oral argument.

On March 30, 2022, Plaintiff filed a notice of supplementary authority. (Doc. 32.)

On July 12, 2022, Plaintiff filed another such notice. (Doc. 33.)

**DISCUSSION**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising of a contract evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

1  revocation of any contract." 9 U.S.C. § 2.  Thus, absent a valid contractual defense, the

2  FAA "leaves no place for the exercise of discretion by a district court, but instead mandates

3  that district courts shall direct the parties to proceed to arbitration on issues as to which an

4  arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

5  218 (1985).  The district court's role under the FAA is "limited to determining (1) whether

6  a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

7  the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130

8  (9th Cir. 2000).

9         Here, Plaintiff seems to concede that the Plan qualifies as a "contract evidencing a

10  transaction involving commerce"—and, thus, the FAA governs the enforceability of the

11  Plan's arbitration provision.  (Doc. 30 at 3-4 [looking to "the FAA" to "determine[]

12  whether the Plan's Arbitration Procedure is enforceable"].)  Plaintiff also seems to concede

13  that the Plan's arbitration provision "encompasses the dispute at issue."  Nevertheless,

14  Plaintiff asserts that the provision is unenforceable (and thus is not a "valid agreement to

15  arbitrate") because (1) it is unconscionable under Arizona law and (2) it improperly

16  restricts the assertion of certain statutory rights under ERISA.[2]  (Doc. 30 at 4-15.)  The

17  Court addresses each in turn.

18  I.    Unconscionability

19        A.    **The Parties' Arguments**

20        Argent argues that "[f]ederal common law, not state law, governs the issue whether

21  the Plan Document's arbitration provisions bind plaintiff.  This is because ERISA contains

22  a broad state law preemption provision."  (Doc. 25 at 7 n.3.)

23        Plaintiff responds that "[u]nder the FAA, Arizona state law determines whether the

24  Plan's Arbitration Procedure is valid and enforceable.  ERISA is silent on arbitration and

25  does not preempt federal statutes such as the FAA.  Further, where a choice of law is made

26  by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair.

27

28  _____

[2]      Plaintiff argues that limiting her statutory remedies is substantively unconscionable (Doc. 30 at 5), but it seems to the Court that the two theories are distinct enough that they should be addressed separately.

1    Thus, Defendants are wrong to contend federal common law, not state law, governs

2    whether Plaintiff is bound by the Arbitration Procedure." (Doc. 30 at 3-4 [cleaned up].)

3          Argent replies that applying Arizona law to an ERISA arbitration provision would

4    interfere with nationally uniform plan administration. (Doc. 31 at 2-3.)  Argent asks the

5    Court to instead apply "a body of federal common law tailored to the policies of ERISA."

6    (*Id.* at 3.)  Argent dismisses cases that have "applied state law under Section 2" of the FAA

7    because "arbitration provisions that are litigated often appear in contracts that are creatures

8    of state law," whereas here the arbitration provision appears in a standalone ESOP that is

9    governed by ERISA, which "emphatically preempts state law." (*Id.* at 4.)  Argent argues

10   that applying Arizona law would "inject the same sort of state-specific rules on plans that

11   Congress sought to avoid in enacting ERISA." (*Id.* at 4.)  Finally, Argent contends that

12   any unconscionability challenge under federal common law fails on the merits because "the

13   arbitration provisions are valid and enforceable against Plaintiff under federal common

14   law." (*Id.* at 2.)

15         B.   **Analysis**

16             1.   <u>Choice Of Law</u>

17         As noted, § 2 of the FAA provides that arbitration agreements such as the one

18   appearing in the Plan shall be valid, irrevocable, and enforceable, "save upon such grounds

19   as exist at law or in equity for the revocation of any contract." Thus, "general contract

20   defenses such as fraud, duress, or unconscionability . . . may operate to invalidate

21   arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

22         In general, courts look to "state contract law" when evaluating the availability of

23   the general contract defenses that may serve to invalidate an arbitration agreement. *Id*.

24   However, the FAA does not, itself, call for state law to govern the enforceability of

25   arbitration agreements.  Courts typically apply state law because "[a]rbitration is a product

26   of contract," and "[w]hen determining whether a valid contract to arbitrate exists, we apply

27   ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.*,

28   755 F.3d 1089, 1092-93 (9th Cir. 2014).  In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624

(2009), for example, the Supreme Court simply observed that the FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* at 630.

But courts do not look to state law when interpreting ERISA plans. Instead, "the interpretation of ERISA . . . policies is governed by a uniform federal common law." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990). This is because "Congress, in enacting ERISA, . . . empowered the courts to develop, in light of reason and experience, a body of federal common law governing employee benefit plans. This federal common law supplements the explicit provisions and general policies set out in ERISA governed by the federal policies at issue." *LaGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015). To that end, ERISA includes a preemption clause that is "one of the broadest preemption clauses ever enacted by Congress." *Sec. Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1188 (9th Cir. 1998). Thus, when interpreting an ERISA plan, "the Court has generally applied federal common law . . . . [T]he general rule is that state common-law rules related to employee benefit plans are preempted." *Dowdy v. Metro. Life Ins. Co.*, 890 F.3d 802, 807-08 (9th Cir. 2018). *See also Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) ("When faced with questions of insurance policy interpretation under ERISA, federal courts apply federal common law."); *Allen v. Honeywell Ret. Earnings Plan*, 2005 WL 8160632, *17 (D. Ariz. 2005) ("Federal common law principles of contract interpretation guide the interpretation of an ERISA retirement plan."). This uniformity prevents a "patchwork scheme of regulation," *FMC Corp. v. Holliday*, 498 U.S. 52, 60 (1990), and prevents litigants from "obtain[ing] remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

Here, because the arbitration provision is found within an ERISA plan, its interpretation is governed by federal common law.[3]

---

[3]      There is no merit to Plaintiff's passing suggestion that the parties made a "choice of law," reflected in the "ERISA contract," to be bound by Arizona law. (Doc. 30 at 11.) The relevant provision of the Plan, § 14.7, provides: "**Controlling Law**.  To the extent not superseded by the laws of the United States, the laws of the State of Arizona shall be controlling in all matters relating to this Plan." (Doc. 26 at 44.)  If anything, this clause supports Argent's position—it suggests that Arizona law should only be applied as a

2.    <u>ERISA Federal Common Law And Substantive Unconscionability</u>

The Court's next task is to evaluate Plaintiff's contract defense of substantive unconscionability under federal common law.

This task is complicated by the fact that neither side addresses, in any detail, how a court should go about evaluating such a defense. Plaintiff relies solely on Arizona law in support of her claim of substantive unconscionability. (Doc. 30 at 4-8.) To the extent Plaintiff mentions federal common law at all, she simply rejects its applicability. (*Id.* at 4 ["Defendants are wrong to contend federal common law, not state law, governs whether Plaintiff is bound by the Arbitration Procedure."].) Meanwhile, although Argent asserts in the introductory paragraph of its reply that "the arbitration provisions are valid and enforceable against Plaintiff under federal common law" (Doc. 31 at 1), this conclusory assertion is not developed in the body of Argent's reply, which focuses on explaining why Plaintiff's reliance on Arizona law is misplaced.

When, as here, neither side meaningfully addresses a key issue, the outcome is dictated by the burden of proof. The Ninth Circuit has explained that, "[a]s arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). Plaintiff has not met that burden here. For this reason alone, her unconscionability challenge to the Plan's arbitration provision fails.

Alternatively, even if Plaintiff had attempted to develop a claim of unconscionability under federal common law, that claim would fail on the merits. In *Noecker v. S. Cal. Lumber Indus. Welfare Fund*, 2011 WL 13147419 (C.D. Cal. 2011), the plaintiff—a participant in an employer healthcare plan covered by ERISA—incurred large medical bills during a helicopter accident. *Id.* at *1-2. When the plan learned the plaintiff was pursuing a tort lawsuit against the responsible parties, it denied the "hospital and

---

fallback position, to the extent it is not preempted by federal law. In contrast, the choice-of-law clause that was deemed enforceable in *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126 (9th Cir. 1993), made no mention of preemption by federal common law—it provided that, without exception, "the rights and obligations of the parties were to be 'governed by the law of Massachusetts, and all questions pertaining to the validity and construction of such rights and obligations shall be determined in accordance with such law.'" *Id.* at 1128.

provider claims for Plaintiff's medical treatment" pursuant to a clause in the plan that authorized the "denial of benefits for injuries caused by third parties when the injured Plan participant is pursuing or intends to pursue a claim or lawsuit for damages against the third party." *Id.* In response, the plaintiff sued the plan under a variety of theories, including that the provision at issue was "unconscionable and contrary to public policy." *Id.* at *3. The district court rejected this argument and granted summary judgment in favor of the plan. First, the court held (as the Court does here) that, to the extent the plaintiff's claim of substantive unconscionability was based on state law, the claim failed because such "state law grounds are preempted by ERISA." *Id.* at *5.[4] Second, the court held that, "[t]o the extent Plaintiff argues that the Court should create and apply a *federal* common law doctrine of unconscionability, such an argument is foreclosed by well-established precedent" establishing that "ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans." *Id.* at *6 (quoting *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 411 (9th Cir. 1995)). The Ninth Circuit affirmed, explaining that, "[r]egardless of the wisdom of the exclusion, . . . Noecker's attorney conceded at oral argument that it violates no provision of ERISA, and we are not free to amend the Plan to our liking." *Noecker v. S. Cal. Lumber Indus. Welfare Fund*, 522 F. App'x 411, 414 (9th Cir. 2013).

Although *Noecker* did not involve an arbitration-related challenge, its discussion of the concept of substantive unconscionability under the federal common law of ERISA remains instructive here. The Ninth Circuit has repeatedly stated that "ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court

---

[4]     Other courts, including courts in the District of Arizona, have likewise concluded that a litigant may not rely on state law when asserting a substantive unconscionability challenge to a provision in an ERISA plan. *See, e.g.*, *JDA Software Inc. v. Berumen*, 2016 WL 6143188 (D. Ariz. 2016) ("Relying primarily on Arizona law, the Berumens argue that the SPD constitutes an unconscionable contract of adhesion. ERISA plans, however, are not governed by state law. Rather, 'the interpretation of ERISA insurance policies is governed by a uniform federal common law.' The Berumens cite no authority applying state unconscionability principles to ERISA plans, nor is the Court aware of any.") (citation omitted).

1    has no authority to draft the substantive content of such plans." *Blau v. Del Monte Corp.*,

2    748 F.2d 1348, 1353 (9th Cir. 1984), *abrogated on other grounds as recognized in Dytrt*

3    *v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n. 4 (9th Cir. 1990). It is difficult to

4    reconcile this principle with the notion that a provision within an ERISA plan could be

5    invalidated under a theory of substantive unconscionability. *See generally Operating*

6    *Engineers Loc. 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 655 (7th

7    Cir. 2001) (hypothesizing that "[t]he federal common law of ERISA may include a concept

8    of unconscionability" but acknowledging that "[n]o case says that"); *Castillo v. Tyson*

9    *Foods, Inc.*, 2015 WL 6039236, *9 (S.D. Tex. 2015) (rejecting substantive

10   unconscionability challenge to provision in ERISA plan because "Castillo cites Texas state

11   contract law, but it does not govern; the federal common law of ERISA does" and because

12   "Castillo has not cited Fifth Circuit cases applying unconscionability under the federal

13   common law of ERISA as a defense against enforcement of a benefit plan's terms").

14   II.    Effective Vindication Of Statutory Remedies

15          A.    **The Parties' Arguments**

16          Plaintiff argues that "the arbitration procedure is void because its non-severable

17   relief provision waives statutory remedies." (Doc. 30 at 8.) Specifically, Plaintiff asserts

18   that § 502(a)(2) of ERISA "authorizes a plan participant to restore *any losses to the plan*

19   resulting from each breach, and to restore to such plan *any profits* of a fiduciary which have

20   been made through use of assets of the plan by the fiduciary." (*Id.* at 9 [cleaned up].)

21   According to Plaintiff, being required to arbitrate individually obstructs "remedies that

22   would protect the entire plan" because individual litigation "limits a participant's remedies

23   to losses to his or her individual account and disgorgement of profits tied to his or her

24   account. A small fraction of Plan losses is not 'any' plan losses; therefore, the provision

25   eviscerates statutory provisions protecting the financial integrity of the Plan." (*Id.* at 9-

26   10.) In Plaintiff's view, the inclusion of this individual-litigation limitation implicates the

27   effective vindication doctrine and renders the entire arbitration provision "void as against

28   public policy." (*Id.* at 8-9.) Plaintiff also contends that her position is supported by the

Supreme Court's opinion in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), and argues that the Ninth Circuit's unpublished decision in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (2019) ("*Dorman II*"), should not control because, *inter alia*, it conflicts with *Munro v. Univ. of S. California*, 896 F.3d 1088 (9th Cir. 2018). (*Id.* at 9-13.) Finally, Plaintiff argues that the October 14, 2021 amendment to the Plan, which allows plan members to remove fiduciaries through arbitration, does not apply to her claims because "it was adopted after she ceased employment and after she filed her Complaint." (*Id.* at 14-15.)

Argent replies that "nowhere does [ERISA] provide . . . that *one* participant has a right to sue for '*any* losses' to a plan or '*any* profits' of a breaching fiduciary." (Doc. 31 at 6.) Argent notes that "the terms of the defined contribution plan under which Plaintiff claims she is entitled to retirement benefits provides that 'any losses' and 'any profits' that a breaching fiduciary would owe under Section 409(a) must be sought and recovered by each plan participant pursuing individual arbitration with respect to their individual accounts, which in the aggregate would amount to complete relief for the Plan." (*Id.* at 6.) Argent argues that the Supreme Court has foreclosed the argument that a provision requiring litigants to proceed in this manner may "form[] the basis for invalidating an arbitration provision." (*Id.* at 6-7.) Argent also cites *Dorman II*'s statement that "although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized" and the Seventh Circuit's holding in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 622 (2021), that § 502(a)(2) claims "authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account." (*Id.* at 6-7.) Finally, Agent contends that in *Holmes v. Baptist Health S. Fla.*, 2022 WL 180638 (S.D. Fla. 2022), the court "refused to apply the [effective vindication] doctrine to a nearly identical arbitration and class action waiver provision." (*Id.* at 1.)

Following the conclusion of the briefing process, Plaintiff filed notices identifying *Harrison v. Envision Management Holding, Inc. Bd. of Directors*, 2022 WL 909394 (D.

1   Colo. 2022), and the Secretary of Labor's amicus curiae brief in *Cedeno v. Argent Trust*
2   *Company*, Case No. 21-2891-cv (2d Cir.), as supplemental authorities supporting her
3   position. (Docs. 32, 33.)

4           B.   **Analysis**

5                1.   The October 14, 2021 Amendment

6           Before addressing whether the Plan's arbitration procedure allows for the effective
7   vindication of Plaintiff's statutory rights under ERISA, the Court must first determine
8   whether that procedure was modified by the October 14, 2021 amendment ("the
9   Amendment"), such that Plaintiff now retains the right to pursue equitable and injunctive
10  relief via the arbitration process that would benefit other participants.

11          Plaintiff correctly notes that the Amendment was adopted after she ceased
12  employment and after she filed her complaint. (Doc. 30 at 14.) Plaintiff asserts that
13  because she never assented to the Amendment or received any consideration, it is
14  unenforceable under Arizona law. (Doc. 30 at 14-15.) In support of this claim, Plaintiff
15  cites *Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999).

16          The Court is familiar with *Demasse*. Earlier this year, it was confronted with an
17  arbitration clause that was added to a consumer contract, which the plaintiff argued was
18  invalid under *Demasse* because it constituted a unilateral modification without affirmative
19  consent. *Cornell v. Desert Fin. Credit Union*, 2021 WL 4710173, *4 (D. Ariz. 2021). This
20  Court questioned whether *Demasse* should be extended beyond the employment context,
21  found that the standard for effective modification of a consumer contract was ambiguous
22  under Arizona law, and ultimately certified the question to the Arizona Supreme Court. *Id.*
23  at *6-9.

24          Although the preceding discussion might suggest that the contract-modification
25  issue here presents a close call, this case has something that *Cornell* did not—an ERISA
26  plan. As discussed earlier, "[f]ederal common law principles of contract interpretation
27  guide the interpretation of an ERISA . . . plan." *Allen*, 2005 WL 8160632, at *17. Thus,
28  Plaintiff's reliance on state-law contract modification standards is misplaced—the question

is whether the Amendment constituted a valid modification under federal common law.

The answer is yes.  The Supreme Court has held that "ERISA provides an employer with broad authority to amend a plan," *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999), and federal courts have generally held that ERISA plans go "beyond take it or leave it"—a plan sponsor may unilaterally amend the plan, and the "potential beneficiary, though not consulted or consenting, ordinarily is bound nevertheless by the amendment." *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998); *accord Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (employers have "large leeway" to modify and amend their plans); *Angel Jet Servs., L.L.C. v. Red Dot Bldg. Sys.'s Emp. Ben. Plan*, 2010 WL 481420, *2 (D. Ariz. 2010) (employee who did not negotiate ERISA plan was still bound by its terms); *Conte v. Ascension Health*, 2011 WL 4506623, *2 (E.D. Mich. 2011) (ERISA plan is not a traditional bilateral contract between plaintiff and defendant).

To be clear, ERISA plan sponsors may not violate their own plan's amendment procedure. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) ("These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means.")  But there was no such violation here.  Under § 16.1 of the Plan, Isagenix "reserve[d] the right to amend this Plan in writing from time to time by action of the Board," so long as the amendment does not change the Trustee's duties and liabilities without the Trustee's consent, reduce the value of benefits accrued before the adoption of the amendment,[5] or result in returning the trust to the employers. (Doc. 26 at 46.)  Plaintiff does not argue that the Amendment violates the Plan's own amendment procedure and the Court agrees that it does not.

Accordingly, the Amendment, which authorizes participants to "seek[] injunctive relief, including . . . seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on other Employees, Participants, or

---

[5]      "The 'anti-cutback' rule of ERISA . . . prohibits any amendment of an employee benefits plan that would reduce a participant's 'accrued benefit.'"  *Andersen v. DHL Ret. Pension Plan*, 766 F.3d 1205, 1207 (9th Cir. 2014).

Beneficiaries" (*id.* at 60), is valid and applies to Plaintiff.

    2.   <u>Merits</u>

    The doctrine giving rise to Plaintiff's final challenge to the enforceability of the Plan's arbitration provision is known as "[t]he effective vindication doctrine." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016). It "provides courts with a means to invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies." *Id.* at 1212 (cleaned up). *See generally Cristales v. Scion Grp. LLC*, 478 F. Supp. 3d 845, 854 (D. Ariz. 2020) ("The effective vindication doctrine is a judge-made exception to the FAA. It holds that an arbitration clause will be enforced only so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum. If an arbitration provision operates as a prospective waiver of a party's right to pursue statutory remedies, courts must not enforce the clause.") (cleaned up). However, the effective vindication doctrine is not triggered simply because an arbitration agreement may make a statutory remedy less efficient or more expensive to pursue—"the fact that [arbitration] is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (emphases omitted).[6]

    Plaintiff contends the effective vindication doctrine is implicated here because the Plan's prohibition against "Group, Class or Representative Arbitrations" (Doc. 26 at 50) interferes with her ability to pursue statutory remedies. To evaluate this argument, it is necessary to examine the statutory remedies that are generally available to an ERISA plaintiff. Section 502(a)(2) of ERISA empowers an ERISA participant or beneficiary to

---

[6]    Recent Supreme Court decisions suggest the effective vindication doctrine may rest on shaky footing. Two years after the Court in *Italian Colors* described the doctrine as stemming from "dictum," 570 U.S. at 235-36, Justice Ginsburg stated in a dissent (which was joined by Justice Sotomayor) that "the Court's refusal to apply the principle in [*Italian Colors*] suggests that the principle will no longer apply in any case." *DirecTV, Inc. v. Imburgia*, 577 U.S. 47, 67 n.3 (2015). Nevertheless, the doctrine remains viable under Ninth Circuit law. *Cristales*, 478 F. Supp. 3d at 854 ("Scion argues that the effective vindication doctrine is 'nearly dead' … [but] Scion cites, and the Court has found, no case stating that the effective vindication doctrine is dead.").

1    bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. §

2    1132(a)(2).  The cross-referenced provision, in turn, provides that "[a]ny person who is a

3    fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or

4    duties imposed upon fiduciaries by this subchapter shall be personally liable to make good

5    to such plan any losses to the plan resulting from each such breach, and to restore to such

6    plan any profits of such fiduciary which have been made through use of assets of the plan

7    by the fiduciary, and shall be subject to such other equitable or remedial relief as the court

8    may deem appropriate, including removal of such fiduciary.  A fiduciary may also be

9    removed for a violation of section 1111 of this title."  *Id.* § 1109(a).

10        In their motion papers, the parties identify *LaRue*, *Munro*, *Dorman II*, *Smith*,

11   *Holmes*, and *Harrison* as the key cases bearing on whether the Plan's prohibition against

12   class-wide arbitration (with a carveout for the pursuit of equitable and injunctive remedies,

13   such as the removal of a fiduciary, that may indirectly benefit other participants) implicates

14   the effective vindication doctrine.  Thus, the Court will begin by discussing each case.

15        In *LaRue*, the Supreme Court addressed whether § 502(a)(2) of ERISA "authorizes

16   a participant in a defined contribution pension plan ['DCP'] to sue a fiduciary whose

17   alleged misconduct impaired the value of plan assets in the participant's individual

18   account."  552 U.S. at 250.  The Court reversed the Fourth Circuit's conclusion that

19   § 502(a)(2) "provides remedies only for entire plans, not for individuals."  *Id.*  The Court

20   saw fit to differentiate DCPs and defined benefit plans ("DBPs") because, whereas DBPs

21   are only threatened by the insolvency of the overall fund, "for [DCP]s, . . . fiduciary

22   misconduct need not threaten the solvency of the entire plan to reduce benefits below the

23   point that participants would otherwise receive."  *Id.* at 255-56.  The Court accordingly

24   held that, because a breach of fiduciary duty in a DCP diminishes plan assets payable "only

25   to persons tied to particular individual accounts . . . [and thus] creates the kind of harms

26   that concerned the draftsmen of § 409," § 502(a)(2) "authorize[s] recovery for fiduciary

27   breaches that impair the value of plan assets in a participant's individual account."  *Id.* at

28   256.

In *Munro*, current and former employees of the University of Southern California ("USC") brought a "putative class action lawsuit" in which they alleged that the administrators of a pair of school-sponsored ERISA plans committed "multiple breaches of fiduciary duty in administration of the Plans." 896 F.3d at 1090.  As a remedy, the class members sought "financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries, including but not limited to: a determination as to the method of calculating losses; removal of breaching fiduciaries; a full accounting of Plan losses; reformation of the Plans; and an order regarding appropriate future investments." *Id.*  In response, USC sought to compel the class members to arbitrate their "collective claims." *Id.*  Notably, the arbitration provisions on which USC relied (unlike the provision at issue here) only required employees to "arbitrate claims brought on their own behalf" and did not say anything about the arbitrability of class-wide claims. *Id.* at 1092.  In response, the plaintiffs in *Munro* (unlike Plaintiff here) did not argue that the arbitration provisions were unenforceable or somehow implicated the effective vindication doctrine—instead, the plaintiffs sought to avoid arbitration on the ground that their claims fell outside the scope of the arbitration provisions. The Ninth Circuit agreed.  *Id.* at 1094 ("[T]he claims asserted on behalf of the Plans in this case fall outside the scope of the arbitration clauses in individual Employees' general employment contracts.   Therefore, the district court properly denied the motion to compel arbitration.  We need not—and do not—reach any other issues urged by the parties.").  In the course of its analysis, the Ninth Circuit also made several observations about *LaRue* and the nature of the plaintiffs' claims, including that "ERISA §502(a)(2) plaintiffs are not seeking relief for themselves . . . [but rather] recovery only for injury done to the plan"; that *LaRue* stands for the proposition that "it is the plan, and not individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan"; and that the plaintiffs' claims, unlike the claims in *LaRue*, went beyond "mismanagement of individual accounts" into "financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries.  [In other words], the Employees are bringing their

claims to benefit their respective Plans across the board, not just to benefit their own accounts as in *LaRue*." *Id.* at 1092-94.

In *Dorman II*, the Ninth Circuit—in an unpublished decision[7]—reversed a district court's order "refusing to compel arbitration of the ERISA breach of fiduciary duty claims asserted" on a class-wide basis. 780 F. App'x at 512. The underlying ERISA plan included a provision "requir[ing] the arbitration to be conducted on an individual rather than collective basis" but the district court held that this provision was "unenforceable" for several reasons. *Id.* at 512-14. The Ninth Circuit disagreed, holding that "the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis." *Id.* at 514. In particular, the Ninth Circuit held that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a [DCP] like that at issue. *LaRue* stands for the proposition that a [DCP] participant can bring a § 502(a)(2) claim for the plan losses in her own individual account. The Plan and Dorman both agreed to arbitration on an individualized basis. This is consistent with *LaRue*." *Id.*

In *Smith*, the plaintiff sued fiduciaries of his ESOP for alleged financial misconduct but faced an arbitration provision that precluded relief that "has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." 13 F.4th at 615. Notably, the arbitration provision there (unlike the one here) precluded the plaintiff from removing a fiduciary, which was a "remedy expressly contemplated by" ERISA and would "go beyond just Smith and extend to the entire plan." *Id.* at 621. For this and other reasons, the Seventh Circuit held that the arbitration provision was unenforceable pursuant to the effective vindication doctrine. *Id.* at 620-23. The court also took pains to note that this outcome raised "no conflict with *Dorman II*" because "[t]he arbitration provision in that case . . .

---

7       Ninth Circuit Rule 36-3(a) states that "unpublished dispositions and orders of this Court are not precedent." The Court does not rely on *Dorman II* as controlling precedent but, given the number of pages devoted to *Dorman II* in each party's briefing, it cannot go unaddressed.

lacked the problematic language [regarding removal of fiduciaries] present here." *Id.* at 623.

Finally, *Holmes* and *Harrison* both addressed motions to compel arbitration of ERISA breach-of-fiduciary-duty claims. In *Holmes*, "the arbitration clause only prohibit[ed] relief that provide[d] 'additional benefits or monetary relief to any person' other than the claimant.'" 2022 WL 180638 at \*3. The district court concluded that this feature distinguished the case from *Smith* in that "the specific relief that Plaintiffs argue has been barred—the ability to seek removal and appointment of the Plan's fiduciaries—is not barred by the arbitration clause." *Id.* Because the plaintiffs were able to pursue plan-wide injunctive relief and were still free to "recover the harm to [the DCP]," the arbitration agreement was deemed valid and enforceable. *Id.* *Harrison*, by contrast, involved an arbitration agreement that prevented the removal and replacement of fiduciaries.[8] 2022 WL 909394 at \*5. The district court found that because the plan precluded the plaintiff from seeking plan-wide remedies, the plaintiff could not effectively vindicate his ERISA rights. *Id.*

As this summary shows, Plaintiff's invocation of the effective vindication doctrine is misplaced. *LaRue* simply authorizes defined contribution plan participants to recover losses from their individual accounts using §502(a)(2) of ERISA. That is exactly what Plaintiff is allowed to do under the Plan. Although *Munro* contains some passages that come closer to supporting Plaintiff's position, it narrowly held that USC's arbitration provision did not cover the relevant issues (because the provision only extended to

---

[8]    Plaintiff cites the Secretary of Labor's amicus brief in a case before the Second Circuit. (Doc. 33 at 4-41.) But in the underlying case, the arbitration provision (unlike the one here) did not authorize individual claimants to seek class-wide equitable remedies. *Cedeno v. Argent Tr. Co.*, 2021 WL 5087898, \*2 (S.D.N.Y. 2021) ("If a . . . Claim is brought under ERISA section 502(a) (2) to seek relief under ERISA section 409, the Claimant's remedy, if any, . . . [may include] such other remedial or equitable relief as the arbitrator deems proper, so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant."). The Secretary of Labor acknowledges this point in the brief. (Doc. 33 at 25 n.2 ["Plaintiff also seeks additional forms of relief . . . . Even under Defendants' reading of *Smith*, therefore, this case would reach the same result as that one: Plaintiff cannot be compelled to arbitrate under an agreement that would bar him from seeking these additional equitable and declaratory remedies."].)

individual claims) and did not address whether the provision was enforceable. Additionally, to the extent *Munro* suggests that an arbitration provision may not prevent an ERISA § 502(a) plaintiff from asserting equitable claims that go beyond benefitting the plaintiff's individual account, that principle does not assist Plaintiff because she is not barred from pursuing such equitable claims here (by virtue of the Amendment). As for *Smith* and *Harrison*, they bar enforcement when (unlike here) an arbitration provision in an ERISA plan precludes an individual participant from pursuing equitable remedies, such as removal of a fiduciary, that would benefit other participants. In contrast, in the two cases (*Dorman II* and *Holmes*) in which courts confronted arbitration provisions similar to the post-Amendment version of the provision at issue here, the provisions were found to be valid and enforceable.

For these reasons, none of the cited cases suggests that an ERISA § 502(a)(2) plaintiff has an unqualified right to bring a collective action to recoup all of a fiduciary's losses and gains at once. True, § 409(a) of ERISA makes a person who breaches fiduciary responsibilities liable "to make good to such plan *any* losses to the plan . . . and to restore to such plan *any* profits." But § 409 describes consequences to the errant fiduciary, not the right of the plan participant. Section 502(a)(2) only grants Plaintiff a right to sue for "appropriate relief under section 409." So, as a textual matter, it is not clear that the fiduciary's duty to produce "any" losses or profits comprehensively defines Plaintiff's right to sue for "appropriate" relief. At a minimum, none of Plaintiff's cited cases support that proposition.

In light of the Supreme Court's instruction to make every effort to harmonize federal statutes and read them together (here, the FAA's pro-arbitration policy and ERISA's right to appropriate relief), the Court concludes that the Plan's arbitration provision does not prevent Plaintiff from effectively vindicating statutory rights under ERISA. There is no indication that ERISA bars plan participants from choosing to waive collective action when an individualized remedy is still available. *Dorman II*, 780 F. App'x at 514.

…

1  III.   Attorneys' Fees

2       A.   **Relevant Provisions**

3       Section 17.9(e) of the Plan states that "[i]n the event a Claimant makes an

4  unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure

5  in any court, the Claimant *shall*, to the maximum extent permitted by law, reimburse the

6  defendants in that action for all attorneys' fees, costs, and expenses they incur in defending

7  against the Claimant's unsuccessful court challenge." (Doc. 26 at 54, emphasis added.)

8       29 U.S.C. § 1132(g)(1) provides that, absent exceptions that are inapplicable here,

9  "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the

10  court in its discretion *may* allow a reasonable attorneys' fee and costs of action to either

11  party." *Id.* (emphasis added).

12       B.   **The Parties' Arguments**

13       Argent requests attorneys' fees and costs pursuant to § 17.9(e) of the Plan if the

14  Court finds that Plaintiff made an "unsuccessful challenge to the validity, enforceability,

15  or scope of the Arbitration Procedure." (Doc. 25 at 17.)

16       Plaintiff responds that even if Argent prevails on its request to compel arbitration,

17  such an outcome would be a "purely procedural victory" that would not entitle Argent to

18  fees under 29 U.S.C. § 1132(g). (Doc. 30 at 16.) Plaintiff also argues that the Plan's fee-

19  shifting provision in § 17.9(e) diminishes her statutory fee-shifting rights under ERISA.

20  (Doc. 30 at 17 [citing *R & L Ltd. Invs., Inc. v. Cabot Inv. Properties*, 729 F. Supp. 2d 1110,

21  1116-17 (D. Ariz. 2010)].)

22       Argent replies that it is not requesting fees under ERISA, but only under § 17.9(e)

23  of the Plan, and under the "American Rule" of fee-shifting, a litigant is only presumed to

24  pay his own fees *unless* a contract provides otherwise. (Doc. 31 at 11 [citing *Hardt v.*

25  *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)].) Argent argues that nothing

26  in ERISA prohibits a plan from providing a different basis for attorneys' fees and that

27  § 17.9(e) should control because Plaintiff is "undisputedly" challenging the enforceability

28  of the Plan's arbitration provision. (*Id.*)

### C.   **Discussion**

It appears to be a question of first impression whether an ERISA plan sponsor may create a separate fee-shifting arrangement within the plan's arbitration agreement. The Court cannot find, and the parties do not offer, any case law addressing the issue. And it is a close question. On one hand, ERISA "provides an employer with broad authority to amend a plan." *Hughes Aircraft*, 525 U.S. at 442. On the other hand, adding a bespoke fee-shifting arrangement to an ERISA plan seems to run the risk of allowing litigants to "obtain remedies . . . that Congress rejected in ERISA," *Pilot Life Ins. Co.*, 481 U.S. at 54, and creating a "patchwork scheme of regulation." *Holliday*, 498 U.S. at 60.

In developing ERISA, Congress balanced competing interests and granted courts discretion to allow a reasonable amount of attorneys' fees to either party. 29 U.S.C. §1132(g). Additionally, under Ninth Circuit law, litigants must establish some degree of success on the merits before that discretionary grant becomes available. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010). Permitting judicial discretion and requiring success on the merits ensures, in part, that grants of attorneys' fees do not dissuade litigants from bringing colorable claims. Allowing Argent to rely on its fee-shifting arrangement, which is (1) mandatory, (2) unilateral, and (3) does not allow consideration of whether a party prevailed substantively, would contravene these goals. The Court therefore concludes that the Plan's contractual fee-shifting arrangement is preempted by § 1132(g)(1) of ERISA. And because Argent is clear that it is *not* requesting fees under ERISA, but only under § 17.9(e), Argent's fee request is denied.

## IV.   Disposition

Plaintiff asks the Court to "dismiss rather than stay the case because arbitration will encompass the entire dispute." (Doc. 30 at 17.) Argent asks the Court for a stay during arbitration. (Doc. 25 at 17.)

The FAA provides that when a court determines that a pending action is "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been

had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added).  Here, both requirements are satisfied—the Court has determined that the underlying matter is referrable to arbitration and one of the parties (Argent) has applied for a stay.  Thus, the stay request "shall" be granted.  Although the Ninth Circuit has suggested that district courts have discretion to order dismissal even when one side has requested a stay, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014), the Court declines in its discretion to do so here.

Accordingly,

**IT IS ORDERED**  that Argent's motion to compel arbitration (Doc. 25) is **granted**. Plaintiff must proceed on an individual basis.

**IT IS FURTHER  ORDERED**  that this action is **stayed** pending resolution of the arbitration proceeding.  The parties are ordered to file a joint notice every six months concerning the status of the arbitration proceeding (with the first report due six months from the issuance of this order) and to file a joint notice within 10 days of when the arbitration proceeding concludes.

Dated this 27th day of July, 2022.

Dominic W. Lanza
United States District Judge